1   Robert A. Sacks (SBN 150146)
    sacksr@sullcrom.com
2   Rory P. Culver (SBN 271868)
    culverr@sullcrom.com
3   SULLIVAN & CROMWELL LLP
    1888 Century Park East
4   Los Angeles, California 90067
    Tel: (310) 712-6600
5   Fax: (310) 712-8800

6   Laura Kabler Oswell (SBN 241281)
    oswelll@sullcrom.com
7   SULLIVAN & CROMWELL LLP
    1870 Embarcadero Road
8   Palo Alto, California 94303
    Tel.: (650) 461-5600
9   Fax: (650) 461-5700

10  Attorneys for Thomson
    Consumer Electronics, Inc.

11

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN FRANCISCO DIVISION**

15

16  IN RE:  CATHODE RAY TUBE        )   Master File No.  3:07-5944-SC
    (CRT) ANTITRUST LITIGATION      )
17                                  )   MDL No. 1917
                                    )
18  _____)   **THOMSON CONSUMER**
                                    )   **ELECTRONICS, INC.'S NOTICE OF**
19  This Document Relates to:       )   **MOTION AND MOTION TO DISMISS**
                                    )
20                                  )   Date:   July 23, 2013
    *Sharp Electronics Corp. et al.* v.   )   Time:   1:00 p.m.
21  *Hitachi, Ltd. et al.*, No. 13-cv-01173.   )   JAMS: Two Embarcadero Center, Suite 1500
                                    )   Judge: Hon. Samuel Conti
22                                  )   Special Master: Hon. Charles A. Legge (Ret.)
                                    )
23                                  )   [[PROPOSED] ORDER FILED
                                    )   CONCURRENTLY HEREWITH]
24                                  )
                                    )
25                                  )
                                    )
26                                  )
                                    )
27                                  )
                                    )
28  _____)

1     <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on July 23, 2013 at 1:00 pm or as soon thereafter

4     as this matter may be heard, before the Honorable Charles A. Legge (Ret.) at the office of JAMS,

5     Two Embarcadero Center, Suite 1500, San Francisco, California, movant Thomson Consumer

6     Electronics, Inc. ("Thomson Consumer"), will and hereby does move this Court for an order

7     dismissing the claims asserted against Thomson Consumer in the above-titled action pursuant to

8     Rule 12(b)(6) of the Federal Rules of Civil Procedure.

9          In support of this Motion, Thomson Consumer relies upon this Notice of Motion

10     and Motion, the Memorandum of Points and Authorities in support thereof and all other matters

11     as may be presented to the Court at the hearing.

12     Dated:  May 17, 2013

13

14                        /s/ Robert A. Sacks

                        Robert A. Sacks (SBN 150146)

15                        Rory P. Culver (SBN 271868)

                        SULLIVAN & CROMWELL LLP

16                        1888 Century Park East, Suite 2100

                        Los Angeles, California 90067

17                        Tel.: (310) 712-6600

                        Fax: (310) 712-8800

18                        Laura Kabler Oswell (SBN 241281)

                        SULLIVAN & CROMWELL LLP

19                        1870 Embarcadero Road

                        Palo Alto, California 94303

20                        Tel.: (650) 461-5600

                        Fax: (650) 461-5700

21

22                        Attorneys for Thomson

                        Consumer Electronics, Inc.

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

ISSUES TO BE DECIDED .................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.      SHARP'S CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE
       STATUTES OF LIMITATIONS ............................................................................... 4

      A.    The Limitations Period Commenced in June 2005 When Thomson Exited
          the CRT Business and Thereby Withdrew From the Alleged Conspiracy. ............ 5

      B.    Even If the Statutes Of Limitations Began to Run at the End of the
          Conspiracy Alleged by Sharp, Its Claims Are Nevertheless Time-Barred. .......... 7

      C.    There Is No Basis for Tolling the Applicable Statutes of Limitations. .................. 7

II.     REGARDLESS, SHARP FAILS TO STATE A FEDERAL OR STATE LAW
       CLAIM. .................................................................................................................... 16

      A.    Sharp Fails to Plead a Claim as to Thomson Consumer ...................................... 16

      B.    Sharp's New York and New Jersey Antitrust and Unfair Competition Law
          Claims Offend Due Process and Constitutional Standing Requirements. ............. 18

      C.    Sharp Lacks Antitrust Standing and Cannot Assert Claims under Federal
          and California, New York and New Jersey Antitrust Laws. ................................. 19

      D.    Sharp's Sherman Act and New York and New Jersey Antitrust Claims
          Related to Purchases of CRT Products Are Barred in Whole or in Part by
          Illinois Brick. ........................................................................................................ 21

III.    SHARP'S CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT
       MATTER JURISDICTION ..................................................................................... 23

      A.    The Entire Complaint Should Be Dismissed. ...................................................... 23

      B.    At Minimum, Claims Based Upon Foreign Purchases or Sales Should Be
          Dismissed. ............................................................................................................. 24

CONCLUSION ...................................................................................................................... 25

SULLIVAN & CROMWELL LLP

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*27001 P'ships* v. *BT Sec. Corp.*,
    No. CV 2004-7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) ................................... 12

5

*Allstate Ins. Co.* v. *Countrywide Fin. Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011) ............................................................ 11

6

7

*Allstate Ins. Co.* v. *Hague*,
    449 U.S. 302 (1981) .................................................................................. 17

8

9

*Am. Ad Mgmt., Inc.* v. *Gen. Tel. Co. of Cal.*,
    190 F.3d 1051 (9th Cir. 1999) ...................................................................... 20

10

11

*Am. Pipe & Constr. Co.* v. *Utah*,
    414 U.S. 538 (1974) .................................................................................. 12

12

*Amarel* v. *Connell*,
    102 F.3d 1494 (9th Cir. 1996) ...................................................................... 19

13

14

*Animal Sci. Prods., Inc.* v. *China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
    596 F. Supp. 2d 842 (D.N.J. 2008) ............................................................ 23, 24

15

16

*Arneil* v. *Ramsey*,
    550 F.2d 774 (2d Cir. 1977) ......................................................................... 12

17

*AT&T Mobility LLC* v. *AU Optronics Corp.*,
    707 F.3d 1106 (9th Cir. 2013) ...................................................................... 18

18

19

*Audio MPEG, Inc.* v. *Thomson S.A., et al.*,
    No. 05-0565 (E.D. Va. Oct. 17, 2005) ............................................................ 22

20

*In re Auto. Refinishing Paint Antitrust Litig.*,
    515 F. Supp. 2d 544 (E.D. Pa. 2007) .............................................................. 17

21

22

*Barker* v. *Am. Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) ......................................................................... 8

23

24

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ........................................................................... passim

25

*Bhan* v. *NME Hosps., Inc.*,
    772 F.2d 1467 (9th Cir. 1985) ...................................................................... 20

26

27

*Boone* v. *Citigroup, Inc.*,
    416 F.3d 382 (5th Cir. 2005) ........................................................................ 12

28

SULLIVAN & CROMWELL LLP

*Cada* v. *Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1990) ........................................................................... 9

*In re Cal. Title. Ins. Antitrust Litig.*,
  No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ........................ 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........................................................... 16

*Cervantes* v. *Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ......................................................................... 10

*Clemens* v. *DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ......................................................................... 13

*Coleman & Co. Sec., Inc.* v. *The Giaquinto Family Trust*,
  236 F. Supp. 2d 288 (S.D.N.Y. 2002) .............................................................. 10

*Conerly* v. *Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ............................................................................. 9

*Conmar Corp.* v. *Mitsui & Co. (USA) Inc.*,
  858 F.2d 499 (9th Cir. 1988) ....................................................................... 8, 10

*Crown, Cork & Seal Co, Inc. v. Parker*,
  462 U.S. 345 (1983) ............................................................................. 12, 13, 14

*Dayco Corp.* v. *Goodyear Tire & Rubber Co.*,
  523 F.2d 389 (6th Cir. 1975) ........................................................................... 10

*Dee-K Enters. Inc.* v. *Heveafil Sdn. Bhd*,
  299 F.3d 281 (4th Cir. 2002) ........................................................................... 23

*In re Ditropan XP Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ........................................................... 22

*Dodds* v. *Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir.1993) ............................................................................... 10

*Dungan* v. *Morgan Drive-Away, Inc.*,
  570 F.2d 867 (9th Cir. 1978) ........................................................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) ........................................................... 19

*In re Fosamax Prods. Liab. Litig.*,
  694 F. Supp. 2d 253 (S.D.N.Y. 2010) .............................................................. 13

*Free Freehand Corp.* v. *Adobe Sys., Inc.*,
  852 F. Supp. 2d 1171 (N.D. Cal. 2012) ............................................................. 5

-ii-

*Gatt Commc'ns, Inc.* v. *PMC Assocs., L.L.C.*,
  711 F.3d 68 (2d Cir. 2013) ................................................................................ 19

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 4

*Global Servs.* v. *IKON Office Solutions*,
  2011 WL 6182425 (N.D. Cal. Dec. 13, 2011) ...................................................... 9

*In re GPU Antitrust Litig.*,
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .........................................................18, 19

*Guerrero* v. *Gates*,
  442 F.3d 697 (9th Cir. 2006) ............................................................................... 9

*Hennegan* v. *Pacifico Creative Serv., Inc.*,
  787 F.2d 1299 (9th Cir. 1986) ............................................................................. 5

*Hexcel Corp.* v. *Ineos Polymers, Inc.*,
  681 F.3d 1055 (9th Cir. 2012) ........................................................................10, 11

*Hinton* v. *Pac. Enters.*,
  5 F.3d 391 (9th Cir. 1993) .................................................................................... 7

*Hoffman* v. *Hospital Affiliates, Inc.*,
  652 S.W.2d 341, 344 (Tenn. 1983) .................................................................... 10

*In re Intel Microprocessor Antitrust Litig.*,
  452 F. Supp. 2d 555 (D. Del. 2006) ................................................................... 24

*In re Intel Microprocessor Antitrust Litig.*,
  476 F. Supp. 2d 452 (D. Del. 2007) ................................................................... 24

*Jablon* v. *Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ............................................................................... 4

*Jolly* v. *Eli Lilly & Co.*,
  751 P.2d 923 (Cal. 1988) ................................................................................... 13

*Kendall* v. *Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ...................................................................6, 17, 22

*Leh* v. *Gen. Petroleum Corp.*,
  382 U.S. 54 (1966) ............................................................................................ 15

*Lindner Dividend Fund, Inc.* v. *Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) ...................................................................... 12

*Maestas* v. *Sofamor Danek Grp., Inc.*,
  33 S.W.3d 805 (Tenn. 2000) ............................................................................. 13

-iii-

*Marine Firemen's Union* v. *Owens-Corning Fiberglass Corp.*,
    503 F.2d 246 (9th Cir. 1974) ............................................................................. 14

*Metz* v. *Unizan Bank*,
    416 F. Supp. 2d 568 (N.D. Ohio 2006) ............................................................... 8

*Morton's Market, Inc.* v. *Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) .................................................................. 5, 6, 20

*Nashville Milk Co.* v. *Carnation Co.*,
    355 U.S. 373 (1958) ........................................................................................... 15

*Navarro* v. *Block*,
    250 F.3d 729 (9th Cir. 2001) ............................................................................... 4

*New York Jets LLC* v. *Cablevision Sys. Corp.*,
    No. 05 Civ 2875, 2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005) ...................... 17

*Novell, Inc.* v. *Microsoft Corp.*,
    505 F.3d 302 (4th Cir. 2007) ............................................................................. 15

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) .................... 21

*Pace Indus., Inc.* v. *Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ............................................................................... 7

*Pecover* v. *Elec. Arts Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) .............................................................. 19

*Phillips Petroleum Co.* v. *Shutts*,
    472 U.S. 797 (1985) ........................................................................................... 18

*Pike* v. *N.Y. Life Ins. Co.*,
    901 N.Y.S.2d 76 (App. Div. 2010) ...................................................................... 5

*Pool Water Prods.* v. *Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) ........................................................................... 15

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-2002, 2012 WL 6645533 (E.D. Pa. Dec. 20, 2012) ........................ 11

*Radio & TV Equip., Inc.* v. *Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-00542 (D.N.J., filed Jan. 28, 2008) ........................................................ 3

*Royal Printing Co.* v. *Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................................. 21

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................ 8

-iv-

*Rutledge* v. *Boston Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) ............................................................................ 9

*Santa Maria* v. *Pac. Bell*,
   202 F.3d 1170 (9th Cir. 2000) .......................................................................... 9

*Sec. Bank & Trust Co.* v. *Fabricating, Inc.*,
   673 S.W.2d 860 (Tenn. 1983) ......................................................................... 10

*Shriners Hosps. for Children* v. *Qwest Commc'ns Int'l Inc.*,
   No. 04-cv-00781, 2007 WL 2801494 (D. Colo. Sept. 24, 2007) ................... 12

*Sickles* v. *Cabot Corp.*,
   877 A.2d 267 (N.J. Super. App. Div. 2005) .................................................. 21

*Snapp & Assoc. Ins. Serv., Inc.* v. *Robertson*,
   96 Cal. App. 4th 884 (2002) ........................................................................... 10

*Socop–Gonzalez* v. *I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001) ........................................................................ 10

*Soward* v. *Deutsche Bank AG*,
   814 F. Supp. 2d 272 (S.D.N.Y. 2011) ........................................................... 13

*Stanislaus Food Prods. Co.* v. *USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011) .......................................................... 21

*State ex rel. Leech* v. *Levi Strauss & Co.*,
   1980 WL 4696 (Tenn. Ch. Ct. Sept. 25, 1980) ............................................... 5

*Steiner* v. *20th Century-Fox Film Corp.*,
   232 F.2d 190 (9th Cir. 1956) ............................................................................ 7

*Streamcast Networks, Inc.* v. *Skype Techs., S.A.*,
   No. CV 06-391, 2006 WL 5437322 (C.D. Cal. Sept. 14, 2006) ................... 11

*Suckow Borax Mines Consolid., Inc.* v. *Borax Consol., Ltd.*,
   185 F.2d 196 (9th Cir. 1950) ............................................................................ 8

*Tech Data Corp.* v. *AU Optronics Corp.*,
   No. 07-md-1827, 2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) .................... 12

*In re Terazosin Hydrochloride Antitrust Litig.*,
   160 F. Supp. 2d 1365 (S.D. Fla. 2001) .......................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-1827, 2010 WL 2609434 (N.D. Cal. June 28, 2010) .................... 18

-v-

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2012 WL 273761 (N.D. Cal. Jan. 30, 2012) ............................................ 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, MDL Dkt. No. 4867 (N.D. Cal. Feb. 23, 2012) ................................... 8, 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2012 WL 149528 (N.D. Cal. Jan. 18, 2012) ............................................ 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ......................................... 18

*Total Benefits Planning Agency, Inc.* v. *Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) ......................................................................................... 17

*Trinity Church* v. *Lawson-Bell*,
    925 A.2d 720 (N.J. Super. Ct. App. Div. 2007) ................................................................. 10

*United States* v. *Antar*,
    53 F.3d 568 (3d Cir. 1995) ............................................................................................... 5

*United States* v. *Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ........................................................................................... 6

*United States* v. *Nerlinger*,
    862 F.2d 967 (2d Cir. 1988) ............................................................................................. 6

*Valley Forge Christian Coll.* v. *Ams. United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1982) ......................................................................................................... 18

*Van Natta Mech. Corp.* v. *Di Staulo*,
    649 A.2d 399 (N.J. Super. Ct. App. Div. 1994) ................................................................. 19

*Vaughn* v. *Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) ........................................................................................... 7

*In re Vertrue Mktg. & Sales Practices Litig.*,
    712 F. Supp. 2d 703 (N.D. Ohio 2010) ............................................................................. 13

*Vincent* v. *Money Store*,
    No. 11 Civ. 7685, 2013 WL 57794 (S.D.N.Y. Jan. 4, 2013) ............................................. 13

*Von Saher* v. *Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ............................................................................................. 4

*Williams* v. *Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008) ........................................................................................... 13

*Wyser-Pratte Mgt. Co.* v. *Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ........................................................................................... 12

-vi-

*Yoder Bros.*, *Inc.* v. *Cal.-Fla. Plant Corp.*,
    537 F.2d 1347 (5th Cir. 1976) ........................................................................... 14

## STATUTES

15 U.S.C. § 12 ............................................................................................................ 15

15 U.S.C. § 15b ........................................................................................................... 5

15 U.S.C. §16(i) ....................................................................................................14, 15

CAL BUS. & PROF. CODE § 16750.1 ............................................................................ 5

CAL. BUS. & PROF. CODE § 17208 .............................................................................. 5

Fed. R. Civ. P. Rule 9(b) ............................................................................................. 8

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................. 1, 4

Fed. R. Civ. P. Rule 12(f) ......................................................................................... 24

Fed. R. Civ. P. Rule 15(c) ......................................................................................... 12

Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a .................... 23

N.J. STAT. ANN. § 56:9-3 ........................................................................................... 19

N.J. STAT. ANN. § 56:9-14 ........................................................................................... 5

N.J. STAT. ANN. § 56:9-18 ......................................................................................... 21

N.Y. C.P.L.R. 214(2) ................................................................................................... 5

N.Y. GEN. BUS. LAW §§ 340 ...................................................................................... 19

N.Y. GEN. BUS. LAW § 340(5) ..................................................................................... 5

N.Y. Gen. Bus. Law § 349 ......................................................................................... 17

TENN. CODE ANN. § 28-3-105 ...................................................................................... 5

## OTHER AUTHORITIES

1998 Sess. Law News of N.Y. Ch. 653 ...................................................................... 21

Hiroyuki Kachi, *Matsushita, Samsung's SDI Operations Searched by Antitrust
    Regulators*, MARKET WATCH, Nov. 9, 2007 ........................................................ 10

*Philips Is Targeted in Investigation*, N.Y. TIMES, Nov. 21, 2007 ............................. 10

SULLIVAN & CROMWELL LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer") respectfully moves to dismiss (the "Motion") the complaint filed on March 15, 2013 (the "Complaint" or "Compl.") by Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp") against Thomson Consumer for failure to state a claim upon which relief can be granted.

**ISSUES TO BE DECIDED**

1.   Whether Sharp's claims against Thomson Consumer are time-barred under the applicable statutes of limitations and whether Sharp has failed to plead any basis for tolling its claims.

2.   Whether Sharp has failed to state a plausible claim against Thomson Consumer.

3.   Whether Sharp's claims against Thomson Consumer under the laws of New York and New Jersey should be dismissed because Sharp does not allege facts sufficient to establish those states' interests in this action consistent with the Due Process Clause of the U.S. Constitution and the prudential standing requirements of the federal judiciary.

4.   Whether Sharp's claims against Thomson Consumer under the Sherman Act and the laws of New York and New Jersey are barred by *Illinois Brick* to the extent that those claims rely on indirect purchases of CRTs or purchases of CRT Products.

5.   Whether Sharp's claims against Thomson Consumer under the Sherman Act and the laws of California, New York and New Jersey should be dismissed because Sharp lacks antitrust standing under *Associated General Contractors*.

6.   Whether Sharp's claims should be dismissed for lack of subject matter jurisdiction to the extent that they relate to wholly foreign sales of CRTs or CRT Products.

**PRELIMINARY STATEMENT**

Five years into this litigation, Sharp's claims against Thomson Consumer—an entity never before named as a defendant in this case—are inexcusably late.  Sharp admits in its

1   Complaint that Thomson Consumer withdrew entirely from the alleged conspiracy almost eight

2   years ago, when Thomson Consumer's parent company, Thomson S.A., sold its CRT business.

3   (Compl. ¶¶ 73-75.)  All of Sharp's claims, which are governed by three-year and four-year

4   statutes of limitations, are therefore time-barred on the face of the Complaint.  Moreover, Sharp

5   does not adequately plead any basis on which to toll the statutes of limitations or otherwise

6   excuse its delay in filing its claims.  Therefore, as Judge Legge found in the Report and

7   Recommendations Regarding Defendants' Motions to Dismiss Direct Action Complaints (the

8   "R&R"), MDL Dkt. No. 1664, when considering similar arguments made by the Philips and LG

9   defendants, these claims should be dismissed with prejudice.

10          Even if timely, Sharp fails to plead a claim against Thomson Consumer for

11   several independent reasons.  *First*, Sharp's blanket allegations as to Thomson Consumer are

12   insufficient under *Twombly*.  Sharp fails to allege any specific, well-pleaded facts with respect to

13   Thomson Consumer.  Although Sharp purports to allege conduct by Thomson S.A., Thomson

14   Consumer's French parent company, those allegations (in addition to being insufficient to state a

15   claim as to Thomson S.A.) do nothing to state a claim as to the distinct entity Thomson

16   Consumer.  *Second*, Sharp's claims under New York and New Jersey law offend due process

17   because Sharp has failed to allege any purchases of the allegedly price-fixed CRTs in those

18   states.  *Third*, under *Associated General Contractors* and *Illinois Brick*, Sharp lacks antitrust

19   standing and cannot bring its claims under federal, California, New York or New Jersey law.

20   *Finally*, Sharp's claims fail for lack of subject matter jurisdiction to the extent that they are based

21   on foreign sales.  For these reasons, Sharp's claims against Thomson Consumer should be

22   dismissed.

23                                    **BACKGROUND**

24          Thomson Consumer ((n/k/a) Technicolor USA, Inc.) is a Delaware corporation

25   with its principal place of business in Indianapolis, Indiana.  (Compl. ¶ 73.)  Thomson Consumer

26   is a wholly owned subsidiary of Thomson S.A., a French corporation with its principal place of

27   business in Issy-Les-Moulineaux, France.  (*Id.* ¶¶ 72-73.)  Until 2004, Thomson Consumer

28   manufactured CRTs for sale to companies in the United States and abroad and for incorporation

1   into CRT televisions manufactured by Thomson Consumer and other Thomson entities. (*Id.*

2   ¶ 73.) In 2004, all of Thomson Consumer's CRT manufacturing operations in the United States

3   were closed. (*Id.*) In June 2005, Thomson S.A. sold the CRT business, including that of

4   Thomson Consumer, to the wholly unaffiliated Videocon Industries, Ltd. ("Videocon"). (*See id.*

5   ¶¶ 73, 75.)

6           On November 13, 2007, the first in a series of putative class action lawsuits

7   concerning an alleged antitrust conspiracy in the CRT market was filed. *See Kindt* v. *Matsushita*

8   *Electric Indus. Co.*, No. 07-cv-10322 (S.D.N.Y., filed Nov. 13, 2007). Less than two weeks

9   later, a second putative class action was filed. *See Crago, Inc.* v. *Chunghwa Picture Tubes, Ltd.*

10  *et al.*, No. 07-cv-05944 (N.D. Cal., filed Nov. 26, 2007). These complaints were prompted by

11  the announcement and reporting of investigations by "government authorities around the world

12  for anticompetitive conduct in connection with the CRT industry," including a "US investigation

13  of the [alleged] CRT conspiracy . . . being conducted by the [Department of Justice ("DOJ")]

14  Antitrust Division in the Northern District of California." (*Id.* ¶ 94.) The commencement of the

15  investigation and the attendant litigation resulted in the termination of any alleged conspiracy by

16  the end of November 2007.[1] Now, almost six years after the termination of the alleged

17  conspiracy and eight years after Thomson exited the CRT business, Sharp seeks to add Thomson

18  Consumer to this litigation on the basis of a sole boilerplate allegation that an unspecified

19  Thomson entity "participated in and/or was a party to [unspecified] bilateral and group

20  meetings" and that Thomson Consumer may have been "at those meetings and/or [party] to the

21  agreements entered at them." (Compl. ¶¶ 187-88; *see also* Compl. ¶ 74 defining "Thomson".)

22

23  [1]      Though Thomson Consumer was not named in any of the original putative class action
    complaints, Thomson S.A., the parent company of Thomson Consumer, was named as a
24  defendant in four of the original complaints. *See Radio & TV Equip., Inc.* v. *Chunghwa Picture
    Tubes, Ltd., et al.*, No. 08-00542 (D.N.J., filed Jan. 28, 2008); *Sound Invs. Corp.* v. *Chunghwa
25  Picture Tubes, Ltd., et al.*, No. 08-00543 (D.N.J., filed Jan. 28, 2008); *Stack, et al.* v. *Chunghwa
    Picture Tubes, Ltd., et al.*, No. 08-01319 (N.D. Cal., filed March 7, 2008); *Ganz* v. *Chunghwa
26  Picture Tubes, Ltd., et al.*, No. 08-01721 (N.D. Cal., filed March 31, 2008). Each of those
    original complaints alleged that Thomson S.A. manufactured, sold, and distributed CRTs and/or
27  CRT Products throughout the United States and was involved in a global conspiracy with other
    named defendants. (*See Radio & TV Equip., Inc.* ¶¶ 27, 69-79; *Sound Invs. Corp.*, ¶¶ 27, 69-79;
28  *Ganz,* ¶¶ 22, 48-72; *Stack* ¶¶ 33, 62-86).

1  Sharp has brought its claim on the basis of what it admits are "publically [sic] available

2  materials, including publicly available materials from *In re Cathode Ray Tube (CRT) Antitrust*

3  *Litigation*, 3:07-cv-5944-SC (N.D. Cal.), MDL No. 1917, the [DOJ] website and other publicly

4  available information regarding related criminal proceedings by the DOJ, the findings of the

5  Japanese Fair Trade Commission, the Korean Fair Trade Commission, [and] the [EC]."  (Compl.

6  at 1 (definitional terms omitted).)  The Complaint further relies upon (1) the very public

7  government investigation of the alleged conspiracy, which Sharp admits began in November

8  2007 at the latest (*id.* ¶¶ 121-22), (2) the EC's announcement on November 8, 2007 of its

9  investigation into the alleged conspiracy (*id.* ¶ 123), (3) the public announcements by Samsung

10  SDI Co. Ltd. and other defendants regarding their cooperation with the investigations (*Id.*

11  ¶¶ 124-28), and (4) the indictment of a number of individuals in connection with an alleged

12  conspiracy.  (*Id.* ¶¶ 9, 129-30, 132-33.)

13         By its own admission, Sharp has been on notice of the alleged conspiracy and its

14  potential claims against Thomson Consumer since at least November 2007.

15                                    **ARGUMENT**

16         A motion to dismiss under Rule 12(b)(6) should be granted if the complaint does

17  not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v.

18  *Twombly*, 550 U.S. 544, 570 (2007); *Navarro* v. *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The

19  Supreme Court explained in *Twombly* that "a plaintiff's obligation to provide the grounds of his

20  entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

21  elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations

22  omitted).  While the Court is required to take all material allegations of fact as true, the Court

23  should not accept "allegations that are merely conclusory, unwarranted deductions of fact, or

24  unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

25  (internal quotations omitted).

26  **I.     SHARP'S CLAIMS ARE TIME-BARRED UNDER THE APPLICABLE
            STATUTES OF LIMITATIONS.**

27

28         The Court should grant a motion to dismiss under Rule 12(b)(6) where the

   expiration of the statute of limitations is apparent on the face of the complaint.  *Von Saher* v.

1   *Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Jablon* v.

2   *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Free Freehand Corp.* v. *Adobe Sys., Inc.*,

3   852 F. Supp. 2d 1171, 1178 (N.D. Cal. 2012).  Sharp's claims here are subject to three- and four-

4   year limitations periods, all of which expired in 2008 and 2009, long before Sharp filed its

5   Complaint on March 15, 2013.[2]

6       **A.   The Limitations Period Commenced in June 2005 When Thomson Exited the
            CRT Business and Thereby Withdrew From the Alleged Conspiracy.**

7

8           For the same reasons articulated in Special Master Legge's recent ruling

9   regarding similar claims against Philips and LG, the statutes of limitations applicable to Sharp's

10  claims against Thomson Consumer began to run, at the latest, in 2005 when Thomson S.A. sold

11  its CRT business, a year after Thomson Consumer discontinued its CRT operations.  *See* R&R at

12  15 (holding that statute of limitations began to run when defendants sold CRT businesses); *see*

13  *also United States* v. *Antar*, 53 F.3d 568, 584 (3d Cir. 1995) (stating that withdrawal is

14  established as a matter of law when defendant "completely severs [its] relationship with the

15  enterprise" and subsequently carries out no acts in furtherance of the conspiracy).  At that time,

16  Thomson Consumer ceased to be liable for any further acts of its alleged co-conspirators, and the

17  statutes of limitations commenced.  *See* R&R at 15; *see also Morton's Market, Inc.* v.

18  *Gustafson's Dairy, Inc*., 198 F.3d 823, 837 (11th Cir. 1999).

19          Sharp alleges that, in 2005, "Thomson SA sold its CRT business to Videocon."

20  (Compl. ¶ 72; *see also id.* ¶ 75 ("Videocon acquired Thomson's CRT businesses, which included

21  manufacturing facilities in Poland, Italy, Mexico and China.").)  Sharp does not allege *any*

22  continued involvement by either Thomson S.A. or Thomson Consumer following the sale of the

23  _____

24  [2]       Sharp's federal antitrust claim is subject to a four-year statute of limitations.  *See* 15
    U.S.C. § 15b; *Hennegan* v. *Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1300 (9th Cir. 1986).

25  Similarly, its claims under the California Cartwright Act, the California Unfair Competition
    Law, the New York Donnelly Act and the New Jersey Antitrust Act are subject to a four-year
    limitations period.  *See* CAL. BUS. & PROF. CODE § 16750.1; CAL. BUS. & PROF. CODE § 17208;

26  N.Y. GEN. BUS. LAW § 340(5); N.J. STAT. ANN. § 56:9-14.  Sharp's claims under the New York
    Unfair Competition Law and Tennessee antitrust statute are subject to a three-year limitations

27  period.  *See* N.Y. C.P.L.R. 214(2); *Pike* v. *N.Y. Life Ins. Co.*, 901 N.Y.S.2d 76, 81 (App. Div.
    2010); TENN. CODE ANN. § 28-3-105; *State ex rel. Leech* v. *Levi Strauss & Co.*, 1980 WL 4696,

28  at *1 (Tenn. Ch. Ct. Sept. 25, 1980).

SULLIVAN & CROMWELL LLP

-5-

1   CRT business in 2005.  (*Id.* ¶¶ 187-88.)  Instead, Sharp alleges that, starting in 2005, Videocon,

2   not Thomson S.A. or Thomson Consumer, participated in the various acts and agreements

3   allegedly constituting the conspiracy.  (*Id.* ¶ 189.)  Accordingly, the Complaint compels the

4   conclusion that Thomson Consumer severed its ties to the CRT business and thereby exited the

5   alleged conspiracy at that time.  *Morton's Market, Inc.*, 198 F.3d at 839 ("Resignation from the

6   conspiring business has frequently been held to constitute effective withdrawal."); *United States*

7   v. *Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (withdrawal established by demonstrating that

8   defendant took "definite, decisive, and positive steps" to dissociate from the conspiracy) (internal

9   quotations omitted).  Thomson S.A.'s sale of its CRT business was a "definitive, decisive, and

10  positive step" that amounted to a withdrawal by both Thomson S.A. and Thomson Consumer

11  from the conspiracy and that was known to the alleged co-conspirators.  *United States* v.

12  *Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988).  (Resignation from enterprise constituted effective

13  withdrawal "because it disabled [defendant] from further participation and made the disability

14  known" to the alleged co-conspirators.)

15          Despite having admitted that both Thomson S.A. and Thomson Consumer ceased

16  all CRT operations by 2005 at the latest, Sharp also alleges that "Thomson never effectively

17  withdrew from this conspiracy."  (Compl. ¶ 187.)  However, Sharp offers nothing to support this

18  conclusion and alleges no conduct by Thomson S.A. or Thomson Consumer after 2005.  (*See id.*

19  ¶¶ 187-88.)  This type of unsupported conclusion is not entitled to any credit, particularly since it

20  is directly contradicted by Sharp's factual allegations, which demonstrate that Thomson

21  Consumer had no involvement in the CRT business after 2005.  *Twombly*, 550 U.S. at 555

22  ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a

23  factual allegation" (internal quotations omitted)); *see also Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d

24  1042, 1047-48 (9th Cir. 2008) (granting motion to dismiss where the plaintiffs "pleaded only

25  ultimate facts, such as conspiracy, and legal conclusions . . . [and] . . . failed to plead the

26  necessary evidentiary facts to support those conclusions").  As a result of Thomson Consumer's

27  exit from the CRT business in 2005, Sharp's claims expired in 2008 and 2009.  Sharp's claims

28  against Thomson Consumer are therefore now four and five years past their expiration and

1   should be dismissed with prejudice.  *See* R&R at 15 (holding, in similar circumstances, that

2   defendants Philips and LG withdrew from any alleged conspiracy when they sold their CRT

3   businesses and that any claims against them were therefore time-barred).

**B.   Even If the Statutes Of Limitations Began to Run at the End of the Conspiracy Alleged by Sharp, Its Claims Are Nevertheless Time-Barred.**

6           Even ignoring Thomson Consumer's withdrawal and accepting the end of the

7   alleged conspiracy as pleaded, Sharp's claims against Thomson Consumer remain time-barred

8   and should be dismissed.  Where an antitrust conspiracy is alleged, "the statute runs from the last

9   overt act" in furtherance of the conspiracy.  *Pace Indus., Inc.* v. *Three Phoenix Co.*, 813 F.2d

10  234, 237 (9th Cir. 1987); *see also Steiner* v. *20th Century-Fox Film Corp.*, 232 F.2d 190, 195

11  (9th Cir. 1956).  Sharp alleges that, between March 1, 1995 and December 2007 (the "Relevant

12  Period"), "Defendants and their co-conspirators formed an international cartel."  (Compl. ¶ 2.)

13  Sharp's allegations concerning the alleged conspiracy are confined exclusively to this "Relevant

14  Period"; Sharp does not allege the occurrence of any overt acts in furtherance of the alleged

15  conspiracy after December 31, 2007.  (*See, e.g.*, *id.* ¶¶ 139, 164, 171-96, 207-13.)  If the statutes

16  of limitations started to run on December 31, 2007, which is the latest date any "overt act" even

17  theoretically could have occurred, Sharp was required to file its claims against Thomson

18  Consumer no later than December 31, 2010 or December 31, 2011 in order to satisfy the

19  applicable three- and four-year limitations periods.  In all events, Sharp's claims are still over a

20  year too late and must be dismissed with prejudice.

**C.   There Is No Basis for Tolling the Applicable Statutes of Limitations.**

22          Sharp is not entitled to tolling as to any of its now long-expired claims against

23  Thomson Consumer.  Where the statute of limitations applicable to the plaintiff's cause of action

24  has clearly expired, "the plaintiff has the burden of proving facts that would toll the statute."

25  *Vaughn* v. *Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th Cir. 1980); *see also Hinton* v. *Pac. Enters.*, 5

26  F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling

27  falls upon the plaintiff . . . [and] does not arise only after a motion to dismiss." (internal citations

28  omitted)).  The complaint must "specifically identify every basis [the plaintiff intends] to rely on

1  to establish tolling of the statute of limitations." *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

2  No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012).

3            As discussed above, although the limitations periods had expired by the end of

4  2009 (and under even the most generous calculation, any limitations period had expired by

5  December 2011), Sharp did not bring the instant action until March 15, 2013—nearly eight years

6  after Thomson Consumer withdrew from the alleged conspiracy and six years after the alleged

7  conspiracy ended.  In an attempt to justify this extreme delay in pursuing what are patently

8  expired claims, Sharp alleges that its claims have been tolled on the basis of: (1) fraudulent

9  concealment by the defendants (Compl. ¶¶ 222-33); (2) the pendency of "the putative class

10  actions asserted against Defendants" (*id.* ¶ 221); and (3) the DOJ's "criminal proceedings and

11  investigations against several Defendants and co-conspirators" (*id.* ¶ 220).  Sharp has not met its

12  burden to plead any of these grounds for tolling.

13            **1.      The Statutes of Limitations Are Not Tolled by Fraudulent**
                         **Concealment.**
14

15            In order to invoke the doctrine of fraudulent concealment, Sharp must adequately

16  plead that Thomson Consumer actively misled Sharp regarding its role in the alleged conspiracy.

17  *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 787-88 (N.D. Cal. 2007).  Sharp's

18  allegations regarding fraudulent concealment are subject to the heightened pleading standard

19  under Rule 9(b) of the Federal Rules of Civil Procedure.  *Conmar Corp.* v. *Mitsui & Co. (USA)*

20  *Inc.*, 858 F.2d 499, 502 (9th Cir. 1988); *Suckow Borax Mines Consolid., Inc.* v. *Borax Consol.,*

21  *Ltd.*, 185 F.2d 196, 209 (9th Cir. 1950).  This requires that Sharp plead that it was actively

22  misled by *each* individual defendant, including Thomson Consumer.  *Metz* v. *Unizan Bank*, 416

23  F. Supp. 2d 568, 579 (N.D. Ohio 2006) ("The Plaintiff must affirmatively plead facts supporting

24  a claim for fraudulent concealment against each specific Defendant who allegedly participated in

25  the concealment in order to state a claim against that Defendant.").  Sharp cannot "use the

26  fraudulent concealment by one defendant as a means to toll the statute of limitations against

27  other defendants." *Barker* v. *Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995)

28  (internal quotations omitted).

1    However, because Sharp acknowledges that Thomson Consumer withdrew from

2  the alleged conspiracy in 2005 and does not allege any conduct whatsoever on the part of

3  Thomson Consumer after 2005, any fraudulent concealment by Thomson Consumer must

4  necessarily have ended in 2005.  Fraudulent concealment therefore does nothing to revive

5  Sharp's expired claims against Thomson Consumer and this Court's previous ruling that the

6  issue of fraudulent concealment is too fact-intensive to resolve at the stage of a motion to dismiss

7  does not apply in this case.

8    Even putting aside Thomson Consumer's withdrawal from the conspiracy in

9  2005, Sharp's allegations of fraudulent concealment are nevertheless inadequate because Sharp

10  has failed to allege the existence of "active conduct by [the defendants], *above and beyond the*

11  *wrongdoing upon which [Sharp's] claim is filed.*"  *Santa Maria* v. *Pac. Bell*, 202 F.3d 1170,

12  1176 (9th Cir. 2000) (emphasis added) (citing *Cada* v. *Baxter Healthcare Corp*., 920 F.2d 446,

13  450-51 (7th Cir. 1990)); *see also Guerrero* v. *Gates*, 442 F.3d 697, 706 (9th Cir. 2006).  Sharp

14  alleges only that a generic group of defendants (not "Thomson Consumer") entered into

15  unspecified anti-competitive agreements through various secret meetings and communications

16  (Compl. ¶¶ 223, 225-228), which is nothing more than the very conduct constituting the alleged

17  conspiracy itself.  Nor is Sharp's bare allegation that "[b]y its very nature, Defendants' price-

18  fixing conspiracy was inherently self-concealing" (*id.* ¶ 224) sufficiently particular to meet the

19  heightened pleading standard.  *See Global Servs.* v. *IKON Office Solutions*, 2011 WL 6182425,

20  at *4 (N.D. Cal. Dec. 13, 2011) (holding that allegations of "self-concealing" wrongdoing were

21  insufficient to toll the statute of limitations through fraudulent concealment).

22    Sharp has also failed to plead that it was diligent in trying to discover the facts

23  underlying its claims.[3]  Equitable tolling, including tolling for fraudulent concealment, is

24

[3]    Sharp alleges only that it "had neither actual nor constructive knowledge of the facts

25  constituting [its] claim for relief despite diligence in trying to discover the pertinent facts"
(Compl. ¶ 222), and that it "could not have discovered the alleged contract, conspiracy or

26  combination at an earlier date by the exercise of reasonable diligence" (*id.* ¶ 225).  These
conclusory allegations regarding due diligence do not justify Sharp's failure to timely bring a

27  claim against Thomson Consumer. *See, e.g., Conerly* v. *Westinghouse Elec. Corp.*, 623 F.2d
117, 120 (9th Cir. 1980) (rejecting fraudulent concealment where plaintiff failed to "allege any

28  facts . . . tending to excuse his failure to discover [defendant's] misconduct"); *Rutledge* v. *Boston
Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment

1   available only where "despite all due diligence, the party invoking equitable tolling is unable to

2   obtain vital information bearing on the existence of the claim." *Cervantes* v. *Countrywide Home*

3   *Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (quoting *Socop–Gonzalez* v. *I.N.S.*, 272 F.3d

4   1176, 1193 (9th Cir. 2001)).  Accordingly, the doctrine of fraudulent concealment would toll the

5   statute of limitations only for that period during which Sharp, acting reasonably, "had neither

6   actual nor constructive knowledge of the facts giving rise to [its] claim despite [its] diligence in

7   trying to uncover those facts."  *Hexcel Corp.* v. *Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th

8   Cir. 2012) (quoting *Conmar*, 858 F.2d at 502).[4]

9           According to its Complaint, Sharp had either actual or constructive knowledge of

10  its claims against Thomson Consumer by no later than November 2007 and cannot rely on

11  fraudulent concealment to toll the statutes of limitations beyond this date.  By Sharp's own

12  admission, the alleged conspiracy has been the subject of publicly announced governmental

13  investigations for many years and has been extensively reported in the press and otherwise.[5]

14

---

15  where plaintiff failed to "state facts showing his due diligence in trying to uncover the facts");
16  *see also Dayco Corp.* v. *Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)
    (rejecting fraudulent concealment argument and noting "mere allegation of due diligence without
17  asserting what steps were taken is insufficient").

18  [4]      The doctrine of fraudulent concealment is equally limited in scope under the state laws
    invoked by Sharp.  [**California**: *Snapp & Assoc. Ins. Serv., Inc.* v. *Robertson*, 96 Cal. App. 4th
19  884, 890-91 (2002) ("The fraudulent concealment doctrine does not come into play, whatever the
    lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a
20  potential claim . . .  A plaintiff is under a duty to reasonably investigate . . . .") (internal citations
    and quotations omitted); **New Jersey**: *Trinity Church* v. *Lawson-Bell*, 925 A.2d 720, 728 (N.J.
21  Super. Ct. App. Div. 2007) ("[A] plaintiff must act with reasonable diligence once it obtains the
    information necessary to file its action and cannot invoke equitable tolling if it has the
22  information in sufficient time to comply with the limitations period."); **New York**: *Coleman &
    Co. Sec., Inc.* v. *The Giaquinto Family Trust*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002)
23  ("Equitable tolling will stay the running of the statute of limitations only so long as the plaintiff
    has exercised reasonable care and diligence in seeking to learn the facts which would disclose
24  fraud.") (quoting *Dodds* v. *Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993)); **Tennessee**: *Sec.
    Bank & Trust Co.* v. *Fabricating, Inc.*, 673 S.W.2d 860, 865 (Tenn. 1983) (stating fraudulent
25  concealment tolls the statute of limitations "only during the period when the plaintiff has no
    knowledge that a wrong has occurred, and, as a reasonable person is not put on inquiry")
26  (quoting *Hoffman* v. *Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983)).

27  [5]      By November 2007, it had already been publicly reported that Matsushita (Panasonic),
    Samsung SDI and Philips were being investigated in connection with the alleged conspiracy.
28  Hiroyuki Kachi, *Matsushita, Samsung's SDI Operations Searched by Antitrust Regulators*,
    MARKET WATCH, Nov. 9, 2007, http://www.marketwatch.com/story/matsushita-samsungs-sdi-
    operations-searched-by-antitrust-regulators; *Philips Is Targeted in Investigation*, N.Y. TIMES,

1   (Compl. ¶¶ 9-10, 121-36.)  Moreover, other plaintiffs were aware of the potential existence of an

2   antitrust conspiracy by this time.  On November 13, 2007 and November 26, 2007, the first two

3   in a series of putative class action complaints in this matter were filed.  *See Kindt*, No. 07-cv-

4   10322; *Crago, Inc.*, No. 07-cv-05944.  Both of these complaints confirm that sufficient

5   information regarding the alleged conspiracy was publicly available during November 2007 to

6   put Sharp on constructive notice of its claims against Thomson Consumer.

7           Furthermore, to the extent that Sharp relies upon allegations of "market

8   concentration" (Compl. ¶ 114), "consolidation" (*id.* ¶ 115), "high costs of entry in the industry"

9   (*id.* ¶¶ 117-18), "homogeneity of [products]" (*id.* ¶¶ 119-20) or "unusual price movements" (*id.*

10   ¶¶ 201-06) to state a plausible antitrust claim, those allegations likewise demonstrate that Sharp

11   had constructive notice of its claims.  *See Allstate Ins. Co.* v. *Countrywide Fin. Corp.*, 824 F.

12   Supp. 2d 1164, 1180 (C.D. Cal. 2011) (noting plaintiff who attempted to rely on observable

13   statistics to establish its claim was faced with a "Hobson's choice" since those same facts would

14   give rise to constructive notice); *see also In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-

15   2002, 2012 WL 6645533, at *4 (E.D. Pa. Dec. 20, 2012) (rejecting fraudulent concealment

16   where "the very allegations in . . . Complaints 'undercut[ ] the Plaintiffs' general claim that there

17   were not any facts or information that might have alerted a reasonable person to investigate' the

18   Defendants' actions"); *Streamcast Networks, Inc.* v. *Skype Techs., S.A.*, No. CV 06-391, 2006

19   WL 5437322, at *6 (C.D. Cal. Sept. 14, 2006) (rejecting fraudulent concealment where the

20   "additional allegations in the [complaint] belie any finding that [plaintiff] was not in fact 'on

21   notice' of the facts underlying its legal claims").

22           Although Judge Legge concluded in the R&R that the Direct Action Plaintiffs

23   could not have discovered the facts underlying their claims within a *six-day period* during

24   November 2007, that conclusion does not provide Sharp with any basis on which to toll its

25   claims against Thomson Consumer for five more years.  *Cf.* R&R at 7.  In this case, Sharp has

26   inexplicably waited more than five years after the initial publicity about the alleged conspiracy

27

28   Nov. 21, 2007, *available at* http://www.nytimes.com/2007/11/21/business/worldbusiness/21iht-philips.4.8424014.html.

1    cited in its Complaint and sixteen months after the Direct Action Plaintiffs filed their opt out

2    actions to bring this suit against Thomson Consumer.  At some point during this time Sharp

3    undoubtedly had "enough information to warrant an investigation" of its claims against Thomson

4    Consumer.  *Hexcel Corp.* 681 F.3d at 1060 (internal quotations omitted); *see also In re TFT-*

5    *LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2012 WL 273761, at *3 (N.D. Cal. Jan. 30,

6    2012) ("[W]hen the conspiracy became publicly known in December 2006, any wrongful

7    conduct on the part of the defendants stopped having its effect, removing the basis for plaintiff's

8    tolling.  To the extent [plaintiff] could not determine [defendants'] role in the conspiracy after

9    December 2006, it was not attributable to their fraud.").  Sharp pleads absolutely nothing to

10   justify its undue delay in discovering its claims against Thomson Consumer.

11                    **2.**      ***American Pipe* Tolling Does Not Apply to Sharp's Claims Against
12                              Thomson Consumer.**

13                    Sharp also alleges that the limitations period is tolled because it was a member of

14   the putative class actions "asserted against Defendants."  (Compl. ¶ 220.)  However, while the

15   filing of a class action may toll the statute of limitations for claims by putative class members

16   against defendants *named* in the class action, *Am. Pipe & Constr. Co.* v. *Utah*, 414 U.S. 538, 554

17   (1974), it does not toll the statute of limitations as to claims against a party who is not named as

18   a defendant in that class action.  *See, e.g., Boone* v. *Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir.

19   2005) (noting that "it is facially obvious" that the pendency of a class action does not toll the

20   statute of limitations as to defendants not named in the class action); *Wyser-Pratte Mgt. Co.* v.

21   *Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (holding that class action tolling does not

22   apply against a defendant who was not named in the class action); *Arneil* v. *Ramsey*, 550 F.2d

23   774, 782 n.10 (2d Cir. 1977) (same), *rev'd on other grounds by Crown, Cork & Seal Co, Inc.* v.

24   *Parker*, 462 U.S. 345 (1983).  Because Thomson Consumer was not and has never been a party

25   to the class action proceedings relied on by Sharp, *American Pipe* tolling does not save Sharp's

26   otherwise time-barred claims.[6]

27   _____

28   [6]      That Thomson Consumer's parent, Thomson S.A., was named in two of the indirect and
     two of the direct complaints does not toll Sharp's claims against Thomson Consumer.  *Tech Data*
     *Corp.* v. *AU Optronics Corp.*, No. 07-md-1827, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6,

Even putting aside the fact that Thomson Consumer was not named in the purportedly tolling class actions, Sharp cannot rely on *American Pipe* to toll its expired state law claims. Sharp alleges that its claims are tolled by virtue of the Direct Purchaser Plaintiff's ("DPP") consolidated amended complaint (Compl. at ¶ 220), which asserts claims under federal law only and does not include the state law claims as to which Sharp now seeks to apply tolling.[7] *See* Dkt. No. 436. *American Pipe* tolling does not apply to claims that are "different [from] or peripheral [to]" those claims asserted in the class action. *Crown, Cork & Seal Co, Inc.* v. *Parker*, 462 U.S. 345 (1983). "[O]nly the claims expressly alleged in a previous federal lawsuit are subject to tolling." *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718-19 (N.D. Ohio 2010); *see also Williams* v. *Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (holding that, since "neither the Original nor the First Amended Complaint stated a claim for compensation discrimination[,] . . . the statute of limitations was not tolled for that claim").

In any event, *American Pipe* tolling would only apply to Sharp's state law claims if the states at issue specifically permit cross-jurisdictional tolling. *See Clemens* v. *DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[F]ederal courts have declined to import the doctrine into state law where it did not previously exist."); *In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 258 (S.D.N.Y. 2010) (same). Sharp does not plead that any of those states whose laws it invokes recognize cross-jurisdictional tolling, which itself precludes

---

2012) (refusing to apply *American Pipe* tolling to claims against affiliates who were not named in class action); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2012 WL 149528, at *4 (N.D. Cal. Jan. 18, 2012); *Shriners Hosps. for Children* v. *Qwest Commc'ns Int'l Inc.*, No. 04-cv-00781, 2007 WL 2801494, at *4 (D. Colo. Sept. 24, 2007); *see also 27001 P'ships* v. *BT Sec. Corp.*, No. CV 2004-7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) (rejecting authorities allowing *American Pipe* tolling of claims against unnamed affiliates as based on inapposite Rule 15(c) standards). In any event, even claims as to Thomson S.A. could be tolled only from the filing of the original complaints to March 16, 2009 when both the Indirect Purchaser Plaintiffs ("IPPs") and DPPs decided not to name Thomson S.A. as a defendant in their consolidated amended class action complaints. *See Lindner Dividend Fund, Inc.* v. *Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995) (holding that a consolidated amended complaint supersedes any earlier complaint and no tolling is available against a defendant not named in that superseding complaint).

[7]      Sharp does not purport to be a member of the IPP class, which encompasses only those who purchased CRTs for their own use and not for resale, and is not entitled to any tolling by virtue of that class action.

1    the application of *American Pipe* tolling to its state law claims.  *See, e.g.*, *In re TFT-LCD (Flat*

2    *Panel) Antitrust Litig.*, MDL Dkt. No. 4867 at 2-3.  In fact, cross-jurisdictional tolling has been

3    explicitly rejected by courts interpreting California,[8] Tennessee,[9] and New York[10] law.  For this

4    additional reason, the limitation periods applicable to Sharp's state law claims are not tolled by

5    the DPP class action.  Those claims are untimely under all circumstances and should be

6    dismissed.  *See, e.g.*, *Crown, Cork & Seal Co.*, 462 U.S. at 354.

7                    **3.        Sharp Is Not Entitled to Rely on Government Action Tolling.**

8                    Sharp further alleges that the limitations periods applicable to its claims against

9    Thomson Consumer are tolled by virtue of "criminal proceedings and investigations against

10   several Defendants and co-conspirators commencing on at least November 2007 through the

11   present."  (Compl. ¶ 220.)  The statute on which Sharp relies states that "[w]henever *any civil or*

12   *criminal proceeding is instituted* by the United States to prevent, restrain, or punish violations of

13   any of the antitrust laws, . . . the running of the statute of limitations in respect to every private or

14   State right of action arising under said laws and based in whole or in part on any matter

15   complained of in said proceeding shall be suspended during the pendency thereof and for one

16   year thereafter . . . ."  15 U.S.C. § 16(i) (emphasis added).  No tolling under 15 U.S.C. § 16(i) is

17   available to the Sharp by virtue of the DOJ's "investigation" of the alleged conspiracy in

18   November 2007.  *See Dungan* v. *Morgan Drive-Away, Inc.*, 570 F.2d 867, 869-71 (9th Cir.

19   1978) (holding that the statute applies once an indictment or complaint is filed).

20

21

---

22   [8]      *Clemens*, 534 F.3d at 1025 (holding that "the weight of authority and California's interest
     in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional
23   tolling into California law"); *see also Vincent* v. *Money Store*, No. 11 Civ. 7685, 2013 WL
     57794, at *14 (S.D.N.Y. Jan. 4, 2013) ("California has not adopted cross-jurisdictional *American*
24   *Pipe* tolling and there is no basis to do so in this case."); *see also Jolly* v. *Eli Lilly & Co.*, 751
     P.2d 923, 935-36 (Cal. 1988) (declining to apply class action tolling under *American Pipe*).
25
     [9]      *Maestas* v. *Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("[W]e decline
26   to adopt the doctrine of cross-jurisdictional tolling in Tennessee.").

27   [10]     *Soward* v. *Deutsche Bank AG*, 814 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) ("In the face of
     these overwhelming precedents, I cannot say that New York would adopt cross-jurisdictional
28   tolling and decline to import the doctrine into New York's law.").

1    The only potential "civil or criminal proceedings" by the "United States"

2  identified by Sharp—indictments of employees of Samsung, LG, and Chunghwa (*see* Compl.

3  ¶¶ 129-34)—do not relate "in whole or in part" to any alleged antitrust conspiracy involving

4  Thomson Consumer and are therefore insufficient to toll any limitations periods as to it.[11]  *See* 15

5  U.S.C. § 16(i).  In order to benefit from tolling, a plaintiff "must prove, by 'comparison of the

6  two complaints on their face[s],' a significant overlap of subject matter between the two actions."

7  *Novell, Inc.* v. *Microsoft Corp.*, 505 F.3d 302, 320 (4th Cir. 2007) (quoting *Leh* v. *Gen.*

8  *Petroleum Corp.*, 382 U.S. 54, 59 (1966)).  Sharp does not allege that there is any "significant

9  overlap" between the claim it now seeks to allege against Thomson Consumer and the

10  government's proceedings against the Taiwanese and Korean manufacturers.  The indictments

11  themselves[12] describe meetings that occurred in Asia and agreements that were allegedly reached

12  between Taiwanese and Korean companies with respect to color display tubes ("CDTs") used in

13  "color computer monitors."  They make no mention of Thomson Consumer and are irrelevant as

14  to Thomson Consumer, which was an American manufacturer of cathode picture tubes ("CPTs")

15  used in color televisions.  (*See id.* ¶¶ 3, 72-73; *see also id.* ¶ 110 ("CRTs can be subdivided into

16  CDTs and CPTs.").)  Put simply, the indictments relate to a market in which Thomson Consumer

17  was not a participant.

18    In all events, none of Sharp's state law claims would be preserved by 15 U.S.C.

19  § 16(i), which only tolls the statute of limitations as to rights of action "arising under" "the

20  antitrust laws."  Section 1 of the Clayton Act sets forth the exclusive list of "antitrust laws,"

21  *Nashville Milk Co.* v. *Carnation Co.*, 355 U.S. 373, 376 (1958), *Pool Water Prods.* v. *Olin*

---

22

23  [11]    As to the Samsung plea agreement, any tolling started on March 18, 2011, when an
Information was filed against Samsung, and ended on May 17, 2012, one year after the

24  "proceeding" was terminated by the filing of the plea agreement.  *See Yoder Bros.*, *Inc.* v. *Cal.-
Fla. Plant Corp.*, 537 F.2d 1347, 1363 (5th Cir. 1976) (holding that government action

25  terminated on the date of entry of consent decree); *see also Marine Firemen's Union* v. *Owens-
Corning Fiberglass Corp.*, 503 F.2d 246, 249 (9th Cir. 1974) (holding the "pendency" of a

26  government proceeding terminates on "date of the entry of judgment of conviction").

27  [12]    *See United States* v. *Wen Jun Cheng*, No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009); *United
States* v. *Chung Cheng Yeh*, No. 10-cr-00231 (N.D. Cal. March 30, 2010); *United States* v.

28  *Seung-Kyu Lee*, No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010); *United States* v. *Samsung SDI Co.,
Ltd.*, No. 11-cr-00162 (N.D. Cal. May 17, 2011).

1    *Corp.*, 258 F.3d 1024, 1031 n.4 (9th Cir. 2001) (same), and none of the state laws relied upon by

2    Sharp are on that list.  *See* 15 U.S.C. § 12.  Accordingly, Sharp's state law claims are not tolled

3    by virtue of 15 U.S.C. § 16(i).  Those claims are therefore time-barred and should be dismissed

4    with prejudice.

5    **II.      REGARDLESS, SHARP FAILS TO STATE A FEDERAL OR STATE LAW
         CLAIM.**

6

7              Sharp otherwise fails to state a claim for at least four reasons:  (1) Sharp does not

8    allege sufficient facts against Thomson Consumer to state a claim under *Twombly*; (2) Sharp fails

9    to allege any purchases in New York or New Jersey; (3) Sharp lacks standing to bring its federal

10   and certain state law claims under *Associated General Contractors* and *Illinois Brick*; and (4)

11   Sharp's claims are based, at least in part, on foreign sales over which this Court lacks subject-

12   matter jurisdiction.

13        **A.      Sharp Fails to Plead a Claim as to Thomson Consumer.**

14             Sharp does not plead factual allegations that "plausibly suggest that [Thomson

15   Consumer] participated in the alleged conspiracy," as this Court has required.  *In re Cathode Ray*

16   *Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010); *see also In re TFT-*

17   *LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (stating plaintiff

18   "must allege that *each individual defendant* joined the conspiracy and played some role in it")

19   (emphasis added).  Although Sharp has alleged specific facts regarding the participation of a

20   number of defendants or co-conspirators in the alleged conspiracy,[13] in the seventy-five

21   paragraphs of the Complaint that detail both the alleged collusion between the defendants over

22   the course of approximately twelve years and the worldwide government investigations of that

23

---

24   [13]      Sharp has alleged the occurrence of: discussions about the price of CRTs between
         Samsung and Chunghwa (Compl. ¶ 138) and between LG Electronics, Samsung, Philips, Thai
25       CRT, Hitachi, Toshiba and Panasonic (*id.* ¶ 140); *ad hoc* meetings between Samsung, LG
         Electronics and Chunghwa (*id.* ¶ 142); meetings between the "Taiwanese manufacturers," the
26       Korean manufacturers," the "Chinese [manufacturers]", and the "Brazilian and Mexican
         manufacturers" (*id.* ¶¶ 148, 169); "Chinese Glass Meetings" attended by IRICO, BMCC, Hitachi
27       Shenzhen, Samsung SDI, and Samsung SDI Tianjin (*id.* ¶ 149); "Glass Meetings" in "various
         European countries" attended by Philips, LG Electronics, and LP Displays (*id.* ¶ 150); and
28       bilateral discussions involving Toshiba, Panasonic, Samtel, Samsung, and Hitachi (*id.* ¶ 170).

-16-

1  conduct, Sharp does not advance a single, well-pleaded allegation regarding Thomson

2  Consumer's involvement.[14]  (*See* Compl. ¶¶ 121-96.)  Instead, Sharp simply asserts that

3  Thomson Consumer "[was] at [the bilateral and group] meetings and/or [was a party] to the

4  agreements entered into at them" and "distributed CRT Products to direct purchasers."  (Compl.

5  ¶ 188.)  This amounts to nothing more than "a bare allegation of a conspiracy [which] is almost

6  impossible to defend against" and is insufficient to state a claim against Thomson Consumer.

7  *See Kendall*, 518 F.3d at 1047.  Further, although Sharp has also made a series of general

8  allegations regarding the "Defendants" (*see, e.g.*, Compl. ¶¶ 144, 159-63, 169), "various

9  Defendants" (*see, e.g.*, *id.* ¶ 166) or "Thomson" (*see, e.g.*, *id.* ¶ 187), these allegations cannot be

10  fairly attributed to Thomson Consumer and are insufficient to state a claim against it.  *See, e.g.*,

11  *Total Benefits Planning Agency, Inc.* v. *Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436

12  (6th Cir. 2008) ("Generic pleading, alleging misconduct against defendants without specifics as

13  to the role each played in the alleged conspiracy, was specifically rejected by *Twombly* . . . .").

14  Notably, the Complaint contains no identification of who from Thomson Consumer did what or

15  when.  Sharp's claims against Thomson Consumer should therefore be dismissed.[15]

16

17  ———————————

[14]      Sharp's single allegation regarding the generic corporate entity "Thomson" (Compl.

18  ¶ 187) is insufficient as a matter of law to put Thomson Consumer on notice of the claims
   against it and fails to state a claim against Thomson Consumer.  *See In re TFT-LCD (Flat Panel)*

19  *Antitrust Litig.*, 586 F. Supp. 2d at 1117 (holding "general allegations as to all defendants, to
   'Japanese defendants,' or to a single corporate entity such as 'Hitachi'" were insufficient to state

20  a claim); *see also In re Cal. Title. Ins. Antitrust Litig*., No. C 08-01341, 2009 WL 1458025, at *8
   (N.D. Cal. May 21, 2009) (holding "general allegations as to the families of . . . companies,

21  without any specific allegations as to what the [defendant] did," were insufficient to state a
   claim).

22  [15]      Sharp has also failed to state a claim under N.Y. Gen. Bus. Law § 349, which requires
   that a plaintiff allege "first, that the challenged act or practice was consumer-oriented; second,

23  that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of
   the deceptive act."  *New York Jets LLC* v. *Cablevision Sys. Corp.*, No. 05 Civ. 2875, 2005 WL

24  2649330 *11 (S.D.N.Y. Oct. 17, 2005).  Sharp has alleged only that the defendants
   "[coordinated] public statements" (Compl. ¶ 144) and reached agreements as to statements to

25  their customers (*id.* ¶¶ 160, 165), but not that the statements themselves were in fact misleading
   or deceptive.  In this regard, any allegedly misleading statements made on behalf of defendant

26  LG Electronics or other defendants does nothing to state a claim against Thomson Consumer (*id.*
   ¶ 230-31).  Furthermore, Sharp's conclusory allegation that the alleged conspiracy "was

27  inherently self-concealing" (*id.* ¶ 224) is insufficient and does nothing to demonstrate deceptive
   conduct on the part of Thomson Consumer.  *See In re Auto. Refinishing Paint Antitrust Litig*.,

28  515 F. Supp. 2d 544, 554 (E.D. Pa. 2007) (dismissing claims under § 349 based on a price-fixing
   conspiracy, holding that "anticompetitive conduct alone does not constitute deceptive conduct

**B.      Sharp's New York and New Jersey Antitrust and Unfair Competition Law Claims Offend Due Process and Constitutional Standing Requirements.**

The Court should also dismiss Sharp's claims under New York and New Jersey law because Sharp does not allege that it purchased any CRTs or CRT Products in either of those states.  This Court cannot apply the law of another state where its application would be inconsistent with the Due Process Clause.  *See Allstate Ins. Co.* v. *Hague*, 449 U.S. 302, 312-13 (1981) ("[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."); *see also Phillips Petroleum Co.* v. *Shutts*, 472 U.S. 797, 821-22 (1985) (same).  "[T]he requirements of the Due Process Clause must be satisfied individually with respect to each defendant in a case." *AT&T Mobility LLC* v. *AU Optronics Corp.*, 707 F.3d 1106, 1113 n.15 (9th Cir. 2013).  In price-fixing cases, courts should consider "all of the Defendants' conduct within [the state] leading to the sale of price-fixed goods outside the state when determining whether [that state's] law could be applied without offending Defendants' due process rights." *Id.* at 1112.

Sharp ignores this fundamental constitutional limitation.  Although Sharp purports to assert price-fixing allegations under the laws of New York and New Jersey, it does not allege that it purchased CRTs or CRT Products in either state.  (*Compare* Compl. ¶¶ 242, 252, 283 (alleging Sharp purchased CRTs and CRT Products in California and Tennessee) *with* Compl. ¶¶ 261, 275 (alleging only that Sharp "conducted a substantial volume of business" in New York and New Jersey, "warehoused" CRT Products in New York and "oversaw . . . CRT procurement activities" in New Jersey).)  Nor does Sharp allege that any of the alleged conspiratorial acts occurred in New York or New Jersey.  (*See, e.g.*, Compl. ¶¶ 7, 140 (alleging the conspiracy was effectuated "through a combination of group and bilateral meetings" throughout Europe and Asia.)  Sharp cannot make any such allegation as to Thomson Consumer, which Sharp admits operated only in Indiana, Pennsylvania and Mexico.  (*See* Compl. ¶¶ 72-73.)  These alleged facts

---

under § 349 . . . to come within the scope of the statute, the Complaint must allege some additional deception or misrepresentation").

1   do not establish "a significant aggregation of contacts" with respect to New York and New

2   Jersey and therefore require dismissal in accordance with the Due Process Clause.  *See*, *e.g.*, *In*

3   *re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 1164897, at *4 (N.D. Cal.

4   Mar. 20, 2013) (applying *AT&T Mobility* standard and dismissing Cartwright Act cause of action

5   where plaintiff failed to "allege conspiratorial conduct of each Defendant in California"); *see*

6   *also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2010 WL 2609434 (N.D.

7   Cal. June 28, 2010), at *2-3 (dismissing antitrust claims where plaintiff failed to plead

8   "significant contacts"); *In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007)

9   (same).[16]

10          C.      **Sharp Lacks Antitrust Standing and Cannot Assert Claims under Federal
                    and California, New York and New Jersey Antitrust Laws.**

12                  Sharp's Sherman Act claims and California, New York and New Jersey antitrust

13   law claims should be dismissed for the additional reason that Sharp has not suffered any antitrust

14   injury.  As the Special Master recognized in the R&R, in *Associated General Contractors*, the

15   Supreme Court articulated a balancing test to determine whether the plaintiff is the proper party

16

17   _____

     [16]     For similar reasons, Sharp's New York and New Jersey claims should be dismissed as a
18   matter of prudential constitutional standing.  *See Valley Forge Christian Coll.* v. *Ams. United for
     Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (requiring plaintiffs' claims fall
19   within the "zone of interests to be protected or regulated by the statute . . . in question"); *see also
     In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001)
20   (dismissing various state antitrust claims where plaintiff failed to allege injury within the state).
     The New York and New Jersey antitrust and unfair competition statutes are intended to address
21   injuries that occur *within the state*.  *See, e.g.*, N.Y. GEN. BUS. LAW § 340 ("Every contract,
     agreement, arrangement or combination whereby . . . [c]ompetition or the free exercise of any
22   activity in the conduct of any business, *trade or commerce* or in the furnishing of any service *in
     this state* is or may be restrained . . . is hereby declared to be against public policy, illegal and
23   void.") (emphases added); N.Y. GEN. BUS. LAW § 349 ("Deceptive acts or practices in the
     conduct of any *business, trade or commerce* or in the furnishing of any service *in this state* are
24   hereby declared unlawful.") (emphases added); N.J. STAT. ANN. § 56:9-3 ("Every contract,
     combination in the form of trust or otherwise, or conspiracy *in restraint of trade or commerce, in
25   this State*, shall be unlawful.") (emphases added).  However, Sharp has not suffered any antitrust
     injury in New York or New Jersey because it did not purchase any CRTs or CRT Products in
26   those states.  *See, e.g.*, *In re GPU Antitrust Litig.*, 527 F. Supp. at 1028; *see also Pecover* v.
     *Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009); *In re Terazosin Hydrochloride
27   Antitrust Litig.*, 160 F. Supp. 2d at 1370-71.  Moreover, it would not independently advance any
     remedial or deterrent purposes of the New York and New Jersey statutes by allowing Sharp to
28   recover for its out-of-state purchases since Sharp already has a cause of action for those
     purchases.

to assert antitrust claims.  R&R at 9-11; *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085 (N.D. Cal. 2007).  Although the Supreme Court was interpreting the Sherman Act, the test set forth in *Associated General Contractors* has been adopted in California, New York and New Jersey.  *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1088-89 (California); *Gatt Commc'ns, Inc.* v. *PMC Assocs., L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013) (New York); *Van Natta Mech. Corp.* v. *Di Staulo*, 649 A.2d 399, 407 (N.J. Super. Ct. App. Div. 1994); *see also* R&R at 11 (applying test to California and other state law claims).  Under the *Associated General Contractors* test, a court must consider "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages."  *Amarel* v. *Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).  "The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors."  *Bhan* v. *NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see also Am. Ad Mgmt., Inc.* v. *Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained.  Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").

Quite simply, Sharp has not suffered injury of "the type the antitrust laws were intended to forestall" to the extent it relies on its purchases of CRT Products.  The relevant market for the purposes of determining antitrust injury is CRTs.  (*See* R&R at 10-11 ("There is a real *market* distinction, and hence a real *legal* distinction, between the finished products and just the CRTs.  The distinction is important to the present pleadings.").)  Sharp has not suffered any "antitrust injury" by virtue of its purchases of CRT Products, which are not part of the "market

1   where competition is being restrained."[17]  *See Am. Ad Mgmt.*, 190 F.3d at 1057; *see also* R&R at

2   11 (dismissing state law claims on same grounds).

3       **D.     Sharp's Sherman Act and New York and New Jersey Antitrust Claims
               Related to Purchases of CRT Products Are Barred in Whole or in Part by**

4       ***Illinois Brick*.**

5           The Court should also dismiss Sharp's claims under the Sherman Act and New

6   Jersey law to the extent it is an indirect purchaser of CRTs because the Complaint does not plead

7   facts showing that Sharp falls within any recognized exception to the rule of *Illinois Brick*.  As in

8   the other complaints before this Court, the Complaint alleges a conspiracy with respect to CRTs,

9   not CRT Products.  (*E.g.*, Compl. ¶¶ 1-2, 4-7, 236-37, 239, 245 (alleging a conspiracy to

10  "coordinate and fix the price of CRTs").)  The Complaint, however, alleges that Sharp purchased

11  both CRTs (*e.g.*, *id.* ¶¶ 27-29, 31) and CRT Products (*e.g.*, *id.* ¶¶ 30, 240, 242) from defendants,

12  both directly and indirectly (*e.g.*, Compl. ¶ 287).  As this Court has already ruled, under *Illinois*

13  *Brick*, a plaintiff can only recover for direct purchases of CRTs, and indirect purchases of CRTs

14  or direct purchases of CRT Products "from an entity owned or controlled by any allegedly

15  conspiring defendant."  MDL Dkt. No. 1470 at 16 (citing *Royal Printing Co.* v. *Kimberly-Clark*

16  *Corp.*, 621 F.2d 323, 325-26 (9th Cir. 1980)).  Therefore, to the extent Sharp asserts claims

17  under the Sherman Act outside these categories, those claims are barred.  *See* MDL Dkt. No.

18  1470 at 2, 16.  For the same reasons, these claims would be barred under the New Jersey

19  Antitrust Act, which is interpreted consistently with federal precedent and does not permit suits

20

21  ———————————————
    [17]     Moreover, none of the other *AGC* factors support a finding of antitrust standing.  The

22  injury that Sharp allegedly suffered stems from charges that were allegedly passed onto it by the
    parties who actually were participants in the CRT market.  (*See, e.g.*, Compl. ¶¶ 240, 250, 265,

23  270, 279 ("Plaintiffs have been injured in their business and property by paying more for CRT
    Products. . . .").)  As a consequence, its injury is indirect and its harm speculative.  Furthermore,

24  allowing it to assert claims regarding CRT Products would create a significant risk of duplicative
    recovery and complexity in apportioning damages.  As Sharp is undoubtedly aware, the CRT is

25  but one of several components used in the manufacture of CRT Products, and the cost of the
    components is but one of several costs associated with getting CRT Products into the hands of

26  end users.  All of these charges will vary across manufacturers of CRT Products.  Therefore, the
    amount of any overcharge that was allegedly paid by Sharp will be largely speculative and nearly

27  impossible to apportion.  Furthermore, this is not a case where there are no direct purchasers of
    CRTs who can assert antitrust claims:  after all, Sharp itself allegedly purchased CRTs from

28  defendants.  Duplicative recovery might therefore occur if the Court allows Sharp's CRT
    Products claims to proceed.

by indirect purchasers.[18]  *See Sickles* v. *Cabot Corp.*, 877 A.2d 267, 274-75 (N.J. Super. App. Div. 2005) ("[I]t is clear New Jersey courts are directed to follow the *Illinois Brick* holding."); *see also* N.J. STAT. ANN. § 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes . . . .").

If Sharp is intending to rely on the "ownership and control" exception to overcome the *Illinois Brick* rule, the Complaint should be dismissed for failing to plead facts establishing that Sharp's alleged purchases fall within that exception.  *See, e.g.*, *Stanislaus Food Prods. Co.* v. *USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1068 n.5 (E.D. Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL 3894376, at *6 (N.D. Cal. Aug. 3, 2011); *see also In re Ditropan XP Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 n.2 (N.D. Cal. 2007) ("If Direct Purchase Plaintiff intends to pursue this action, it should be careful to plead facts that demonstrate a basis to maintain a direct purchaser action against [defendant] based on sales by [its alleged subsidiary].").  Sharp has not done so.  Although Sharp claims to have purchased CRTs and CRT Products from defendants, it provides only the vaguest details concerning its purchases.  (*See, e.g.*, Compl. ¶ 11 ("Plaintiffs purchased CRT Products . . . directly and indirectly from Defendants and their co-conspirators, and/or Defendants' and their co-conspirators' subsidiaries and affiliates controlled . . . .").)  In fact, Sharp does not identify even one defendant from whom it allegedly purchased CRTs and CRT Products.  Sharp takes a similar approach to pleading defendants' "ownership and control," including blanket, conclusory allegations of "domination and control."  (*See, e.g.*, *id.* ¶ 73 ("Defendant Thomson SA dominated and/or controlled the finances, policies, and/or affairs of Thomson Consumer . . . relating to the antitrust violations alleged in this Complaint.").)  Sharp must do more than plead these types of generalities and conclusions.[19]  *See Kendall*, 518 F.3d at 1050 (affirming dismissal of complaint

---

[18]     These claims would likewise be barred under New York law to the extent they relate to purchases made prior to the passage of New York's *Illinois Brick* repealer statute.  MDL Dkt. No. 665 at 23-24 (dismissing claims related to indirect purchases pre-dating the enactment of applicable *Illinois Brick* repealer statutes); *see also* 1998 Sess. Law News of N.Y. Ch. 653 (amending Donnelly Act).

[19]     Sharp has not advanced a factual basis for its contention that Thomson S.A. "dominated and/or controlled" Thomson Consumer and indeed would not be able to do so, since the two entities are entirely distinct in law and fact.  *See Audio MPEG, Inc.* v. *Thomson S.A., et al.*, No.

1    alleging co-conspirator exception applied where plaintiff failed to plead "evidentiary facts . . . to

2    support such conclusion").

3    **III.    SHARP'S CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT
            MATTER JURISDICTION.**

4

5        **A.    The Entire Complaint Should Be Dismissed.**

6                Finally, this Court lacks subject matter jurisdiction over Sharp's Complaint

7    because it alleges the occurrence of a foreign conspiracy but does not allege sufficient facts to

8    show that this foreign conduct caused "a direct, substantial, and reasonably foreseeable effect"

9    on U.S. commerce.  Foreign Trade Antitrust Improvements Act of 1982, 15 U.S.C. § 6a

10   ("FTAIA").  In order to survive a motion to dismiss, a plaintiff's allegations of "direct,

11   substantial, and reasonably foreseeable effect" on domestic commerce must have "enough

12   [factual] heft" to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 570;

13   *see also Animal Sci. Prods., Inc.* v. *China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F.

14   Supp. 2d 842, 850-51, 876-77 (D.N.J. 2008) (applying *Twombly* in evaluating a motion to

15   dismiss for lack of subject-matter jurisdiction under the FTAIA).

16               The Complaint describes an alleged foreign conspiracy involving foreign

17   meetings attended by residents of foreign countries, and is "infused with statements

18   unambiguously indicating that Defendants' allegedly illegal combination activities . . . took place

19   [in] locales other than the United States" and "targeted and affected Defendants' entire world

20   trade . . . rather than aiming primarily at the United States market."  *Animal Science Prods.*, 596

21   F. Supp. 2d at 869.  The named defendants and co-conspirators are overwhelmingly residents of

22   foreign countries, including Japan, South Korea, China, Taiwan, Malaysia, Indonesia, Hong

23   Kong, the Netherlands, France, India and elsewhere.  (*See* Compl. ¶¶ 32-102.)  Sharp alleges that

24   these entities were represented at hundreds of meetings, most of which took place in Asia or

25   occasionally in Europe or South America, but never in the United States.  (*See, e.g.*, *id.* ¶¶ 7, 138,

26   05-0565 (E.D. Va. Oct. 17, 2005) (granting Thomson S.A.'s motion to dismiss a complaint for

27   lack of personal jurisdiction and holding that "Thomson S.A. and Thomson, Inc. [k/a Thomson
     Consumer n/k/a Technicolor USA, Inc.] are separate corporations in form and fact.  They have

28   separate corporate offices, officers, and bank accounts.  Thomson, Inc. is independently
     responsible for selling, marketing, and distributing its products.").

140, 148-49, 150, 167.)  Sharp does not allege that the price of CRTs in the United States was specifically discussed at any of these meetings or was the subject of any specific agreement by the defendants.  Instead, Sharp alleges only that the foreign conduct had an indirect and attenuated effect in the United States in that "[t]he overall CRT conspiracy set and/or affected worldwide prices (including prices in the United States)."  (Compl. ¶ 144.)  However, a trickle-down effect in the United States is insufficient to ground jurisdiction under the FTAIA.  *See Dee-K Enters. Inc.* v. *Heveafil Sdn. Bhd*, 299 F.3d 281, 295 (4th Cir. 2002) (affirming judgment that conspiracy did not have sufficient U.S. effects where "the bulk of the conduct related to the global conspiracy . . . occurred abroad" and "[t]he target of the conspiracy was a global market").  Sharp's tenuous allegations in support of subject matter jurisdiction do not change the fact that Sharp has alleged a conspiracy regarding an essentially "single, unitary, world-wide market" that has "nothing more than what courts have termed a 'ripple effect' on the United States domestic market" that is insufficient under the FTAIA.  *See In re Intel Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 559-60 (D. Del. 2006) (dismissing antitrust claims based primarily on foreign conduct).  Sharp cannot save its Complaint with boilerplate allegations that the alleged conspiracy "had a direct, substantial, and reasonably foreseeable effect on United States domestic commerce" (Compl. ¶ 12), or "affected billions of dollars of commerce throughout the United States" (Compl. ¶ 8).  *See, e.g.*, *Animal Sci. Prods., Inc.*, 596 F. Supp. 2d at 876-77.  Sharp's Complaint should therefore be dismissed for lack of subject matter jurisdiction.[20]

**B.    At a Minimum, Claims Based Upon Foreign Purchases or Sales Should Be Dismissed.**

If the Court is not inclined to dismiss Sharp's entire Complaint, at a minimum, Sharp's claims should be dismissed insofar as they are based upon purchases or sales outside of

---

[20]    Because this Court lacks subject matter jurisdiction over Sharp's claim under federal law, its claims under state law should also be dismissed since the application of state law to foreign conduct would infringe upon the federal government's sovereign power to regulate foreign commerce.  *See In re Intel Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (holding that, where the jurisdictional prerequisites of the FTAIA are not fulfilled, "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not.").

the United States.  With respect to any such transactions, the Complaint alleges no basis for the

"direct, substantial, and reasonably foreseeable effect" on U.S. commerce that the law requires to

confer jurisdiction.  Thus, Sharp's claims should, at the very least, be limited in scope to claims

based on sales of allegedly price-fixed CRTs that occurred in the United States, and all

allegations regarding foreign anticompetitive conduct should be stricken pursuant to Rule 12(f),

Fed. R. Civ. P.

### CONCLUSION

For the foregoing reasons, Sharp has failed to state a cognizable claim against

Thomson Consumer, and its Complaint should be dismissed with prejudice.


Dated:  May 17, 2013                          Respectfully submitted,

                                               /s/ Robert A. Sacks
                                              Robert A. Sacks (SBN 150146)
                                              Rory P. Culver (SBN 271868)
                                              SULLIVAN & CROMWELL LLP
                                              1888 Century Park East, Suite 2100
                                              Los Angeles, California 90067
                                              Tel.: (310) 712-6600
                                              Fax: (310) 712-8800

                                              Laura Kabler Oswell (SBN 241281)
                                              SULLIVAN & CROMWELL LLP
                                              1870 Embarcadero Road
                                              Palo Alto, California 94303
                                              Tel.: (650) 461-5600
                                              Fax: (650) 461-5700

                                              Attorneys for Thomson
                                              Consumer Electronics, Inc.